The State, *ex rel.* Godfroy, *v.* The Board of Commissioners of Miami County.

| 63 | 497 |
|---|---|
| 129 | 200 |
| 63 | 497 |
| 131 | 93 |
| 63 | 497 |
| 151 | 244 |
| 63 | 497 |
| 188US686 | |

THE STATE, EX REL. GODFROY, *v.* THE BOARD OF COMMISSIONERS OF MIAMI COUNTY.

TAXES.—*Lands Held by Indians.—Mandate to Refund Illegal Taxes.—County Commissioners.—Complaint.*—In an action by the State, on the relation of one claiming to be an Indian of a certain tribe holding lands reserved to them in this State pursuant to a treaty with the United States, to compel a board of county commissioners by mandate. to refund certain alleged

illegal taxes assessed against such lands and collected from such Indians, the complaint failed to allege that such lands were reserved to such Indians as a tribe or band, and not individually.

*Held*, on demurrer, that the complaint is insufficient.

*Held*, also, that, by section 10 of the act of December 21st, 1872, in relation to the assessment of taxes, 1 R. S. 1876, p. 72, lands in this State, reserved to or for any individual under any treaty between an Indian tribe and the United States, are taxable from the date of confirmation of such treaty.

SAME.—*Application to Commissioners to Refund.—Appeal.—Mandate.—Remedy.*—Where an application has been made to and refused by a board of commissioners under the provisions of the act of March 2d, 1853, 1 G. & H. 110, for the refunding of taxes illegally assessed and collected, the remedy of the applicant is by appeal thence to the circuit court and not by mandate.

SAME.—*Judicial Act.—Ministerial Act.*—The action of a board of commissioners upon such an application is a judicial, and not a ministerial, act.

From the Miami Circuit Court.

*H. J. Shirk, J. Brownlee* and *H. Brownlee*, for appellant.
*N. O. Ross* and *J. Mitchell*, for appellee.

NIBLACK, J.—This was a proceeding instituted in the court below, in the name of the State, on the relation of Gabriel Godfroy, *alias* Top-Pier-Yah, against the Board of Commissioners of the county of Miami, to compel them to refund certain taxes alleged to have been improperly collected from the relator.

The complaint, which was verified by affidavit, may, after some immaterial changes in its phraseology merely, be stated as follows:

" Gabriel Godfroy, for himself and others, whose names are too numerous to be named as relators, but whose grievances are in all things similar to the claim of said Godfroy, complains of the Board of Commissioners of the county of Miami, and informs the court, that the said Godfroy is a Miami Indian, and a member of that part of said tribe designated by the treaty of 1854, made between the United States and the Miami Indians, as the Miamis of Indiana.

" Said relator also informs the court, that he is the son of Francis Godfroy, one of the chiefs of said Miami nation; that he, said relator, has always resided on the lands reserved to him and his ancestors, members of said tribe, which have never been owned by any citizen of the United States.

" Said relator avers, that he and the others, for whom he also sues, are of the Miami tribe and nation of Indians named and specified in the several treaties made between the United States and the Miami Indians, and in the acts of Congress passed in relation to said Miami Indians. Said relator, for himself and said others he represents, claims that they have never been citizens of the State of Indiana, nor of the United States, but that said Indians named and referred to in said treaty of 1854, (of which said relator and said others are a part,) were, before and since said treaty of 1854, part of a dependent tribe residing in the State of Indiana, and are not governed by, nor subject to, the laws of the State of Indiana, only so far as the public safety requires.

" Said relator charges, that he and said others, on whose behalf he sues, have been the owners of personal and real property, the said real property being the real estate so reserved to them and their ancestors, as aforesaid, on and for which they have been charged, and have been required by the treasurer of said county of Miami to pay, a large amount of taxes, both State and county, to wit, by said Godfroy, State taxes one thousand one hundred dollars; county taxes twenty-five hundred dollars, which includes all taxes except State, school and sinking-fund taxes.

" Said relator further informs the court that his and said other property was listed for taxation, charged on the proper duplicate and collected by said treasurer from him and those others for whom he also appears, as if they had been citizens of said State, and as if they and their prop-

erty had been liable to be charged with taxes, which taxes were so charged and collected for the year 1874, and preceding years.

"Said relator further charges that he appeared before said board of commissioners, when in session, and offered to show and prove the facts and matters herein above stated, and to have said taxes so wrongfully collected refunded, so far as the same have been paid into the county treasury of said county, and to have said board of commissioners certify to the auditor of said State of Indiana said state taxes which had been paid into the state treasury.

"Said relator further charges that said board of commissioners refused to so refund to him said county taxes, and refused to certify to said auditor of state said state taxes, and still refuse. Wherefore said Godfroy asks that a mandate be issued to and against said board of commissioners requiring them to so refund and certify said taxes and other proper relief."

The defendant demurred to the complaint for want of sufficient facts, and the court sustained the demurrer.

The plaintiff declining to plead further, there was judgment upon demurrer, in favor of the defendant and against the relator, for costs.

The question of the sufficiency of the complaint is therefore the only question we are required to decide.

It is not averred in the complaint, that the lands on which the relator was compelled to pay, and did pay, taxes, were reserved to, or held by, the Miami Indians as a tribe, or by any subdivision of such Indians as a band. This case does not, therefore, come within the rule as to the non-taxability of the lands of certain Miami Indians, laid down in *Me-shing-go-me-sia* v. *The State*, 36 Ind. 310.

In the act of December 21st, 1872, 1 R. S. 1876, p. 72, sec. 10, it is provided, that "All lands reserved to or for

any individual, by any treaty between the United States and any Indian tribe or nation, shall be liable to taxation from the time such treaty shall have been confirmed."

Our attention has not been called to any provision in any of the treaties between the United States and the Miami Indians, which is in conflict with the section of the statute above quoted. We will therefore assume, that the section thus quoted is of valid and binding authority upon the Miami Indians, as well as the white people, of the State. Acting upon that assumption, and upon the theory that, in this case, it devolved upon the relator to show affirmatively, that the lands so reserved to him and his ancestors were not subject to taxation, we think there ought to have been some averment in the complaint making it appear that such land did not fall within the class of reserved lands covered by the section above set out. There is, however, no such averment. On the contrary, the inference from what is alleged is rather that the relator's lands were reserved to him and his ancestors individually, and not collectively with others.

Again, the act of March 2d, 1853, providing for the refunding of taxes wrongfully assessed and collected, 1 G. & H. 110, which we hold to be still in force, except as modified by the act of February 8th, 1877, as regards certain school lands, Acts 1877, Reg. Sess., p. 139, although not contained in Davis' revision of the statutes, of 1876, enacts, in effect, that an appeal lies in cases where county commissioners refuse to hear applications of persons to have taxes wrongfully collected refunded to them, as in other cases of appeals from the decisions of such commissioners.

Upon the allegations of the complaint as to the refusal of the defendant to hear the application of the relator to have the taxes complained of refunded, we are of the opinion that the relator's proper remedy was by an appeal

to the circuit court, and not by application to that court for a mandate against the commissioners.

The hearing of the proofs and determination of the right of a party to have taxes paid by him refunded is a judicial rather than a ministerial act, and hence not a proper subject to be controlled by a mandate from a superior court. See *The State, ex rel. Reynolds,* v. *The Board of Commissioners of Tippecanoe County,* 45 Ind. 501, which is, in many respects, a parallel case to the one in hearing. High's Extraordinary Legal Remedies, sec. 617.

. We do not deem it necessary to pass upon some other questions discussed by counsel, as the insufficiency of the complaint, for the reasons already given, requires us to affirm the judgment below.

The judgment is affirmed, at the costs f the relator of the appellant.

Petition for a rehearing overruled.